UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FAST TEK GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:05-cv-01868-DFH-TAB |
| ) | |
| PLASTECH ENGINEERED PRODUCTS, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Fast Tek Group, LLC, has sued Plastech Engineered Products, Inc., for breach of contract, open account, and unjust enrichment. Plastech manufactures components for General Motors and other automobile companies. General Motors became dissatisfied with the quality of product it was receiving from Plastech, so it ordered Plastech to contract with one of several GM-approved companies for additional quality control services. Fast Tek was on the list. Plastech engaged Fast Tek to inspect samples of Plastech's product and to provide other quality control services at the cost and expense of Plastech. Fast Tek provided those services from September 2004 to November 2005, but Plastech has refused to pay invoice amounts totaling $1,117,042.45.

Fast Tek has moved for summary judgment on its claim for breach of contract with damages of $1,117,042.45, plus interest, costs, and attorney fees.

In the alternative, Fast Tek seeks a summary judgment finding that Plastech owes at least $790,290.00, based on admissions by Plastech. In opposition, Plastech has offered only one vague affidavit claiming that there was an oral agreement to modify the contract terms. As explained below, that vague affidavit is not specific enough to raise a genuine issue of material fact supporting Plastech's claim of an oral modification. The court therefore grants Fast Tek's motion for summary judgment.[1]

*Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[1] The court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff Fast Tek is a limited liability company whose members are citizens of Canada, Indiana, and North Carolina. See generally *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (limited liability company has citizenships of all members). Defendant Plastech is a Michigan corporation with its principal place of business in Michigan.

On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which the party believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323. Plaintiff Fast Tek bears the initial burden of proving every essential element of its claim. To defeat a summary judgment motion, the non-moving party must present more than mere speculation or conjecture. Where the moving party has met the threshold burden of supporting the motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Only *genuine* disputes over material facts can prevent a grant of summary judgment. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* A mere scintilla of evidence supporting the non-moving party's position is not sufficient. See *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 933 (7th Cir. 1997), citing *Anderson*, 477 U.S. at 252. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Id.* at 252; *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997).

*Undisputed Facts*

Plaintiff Fast Tek has properly supported its motion for summary judgment with a statement of undisputed material facts. The court treats those facts as undisputed for purposes of the motion except to the extent that Plastech has specifically controverted them or shown they are not supported by admissible evidence. See S.D. Ind. Local Rule 56.1(e). Plastech has not done either with respect to Fast Tek's assertions of undisputed facts, though it has attempted to assert additional facts it contends are material.

Plaintiff Fast Tek provides inspection, sorting, containment and engineering services to automobile manufacturers, including General Motors. Defendant Plastech manufactures components for automobile manufacturers, including General Motors. General Motors regularly contracts with third-party companies to ensure quality control of parts and components. It maintains a list of approved and preferred quality control companies that it requires its suppliers, including Plastech, to use for the inspecting, sorting, and related quality control services. Fast Tek is one of eight companies on the GM-approved list for the United States.

Pursuant to Plastech's supply agreement with General Motors, if Plastech received from GM a "Controlled Shipping – Level 2" letter (the "CS2 Letter), Plastech was required to implement immediately "CS2 containment," to enter into a contract with a GM-approved CS2 preferred provider *within 24 hours of receipt* of the CS2 Letter from GM, and to pay the preferred provider's costs.

At various times in 2004 and 2005, Plastech advised Fast Tek that Plastech had received CS2 Letters from GM advising that it would be required to provide immediately certain inspection, sorting, containment and related services for components manufactured by Plastech for GM. See First Am. Compl. Ex. A.

Upon receiving the CS2 Letters, Plastech was obligated to send General Motors a Controlled Shipping Level 2 Confirmation Reply ("CS2 Reply"). At the specific instance and request of Plastech, Fast Tek provided labor and materials to Plastech, including, but not limited to, third party controlled inspection, sorting, containment, rework, engineering and related services as required by the CS2 Letters, the General Motors Supplier Quality Processes and Measurements Procedure GP-5, the General Motors Supplier Quality Improvement Process, the General Motors Enhanced Supplier Engagement Process, and the Ford Motor Company Product Validation Audit Process (collectively, the "Services").

At various times in 2004 and 2005, in response to CS2 Letters that Plastech received from General Motors or other requirements from General Motors or Ford, Plastech selected Fast Tek to perform the Services. At various times during 2004 and 2005, Fast Tek provided Plastech with Controlled Shipping Pricing Summaries. The first of these was provided on September 28, 2004, see First Am. Compl. Ex. C, and Fast Tek provided this to Plastech before Plastech requested and before Fast Tek provided the Services in dispute in this case. The Controlled Shipping Pricing Summary sets forth hourly and overtime rates for inspectors,

lead inspectors, and managers for the Services, provides that Plastech is liable for transportation expenses, per diem food expenses and lodging, and incorporates by reference Fast Tek's Standard Terms of Service ("Terms of Service"), which was provided with the Controlled Shipping Pricing Summary sent to Plastech on September 28, 2004. The Controlled Shipping Pricing Summary also informed Plastech that the Terms of Service are available through its customer service department and on its website. See First Am. Compl. Ex. D.

Paragraph 11 of the Terms of Service states:

> This Terms of Service Agreement is the complete and exclusive statement of the agreement of the parties with respect to the services authorized hereunder and supersedes and merges all prior proposals, understandings, and agreements, whether oral or written, between the parties with respect to the subject matter hereof. No supplement, modification, or amendment of any provision of this Agreement shall be binding unless executed in writing by both parties to this Agreement. Customer is hereby notified by Fast Tek's objection and rejection of any additional terms in customer's proposal, acknowledgment, purchase order or other documents.

Paragraphs 2 and 3 of the Terms of Service further provide that Fast Tek is entitled to interest at the annual rate of 12 percent on any invoice charges that are not paid when due, together with all costs and expenses incurred by Fast Tek, including costs of collection and litigation and reasonable attorney fees, to enforce its rights under the contract.

Fast Tek provided the Services for Plastech in 2004 and 2005 at Plastech's specific instance and request, and Plastech agreed to pay for those services.

Exhibit E to the First Amended Complaint sets forth the unpaid invoice amounts for the Services that Fast Tek provided to Plastech, all after September 28, 2004. Fast Tek has performed all conditions precedent (or their performance has been excused or waived), and Fast Tek has demanded payment. Plastech has failed to pay for all of the Services. Fast Tek contends the amount owed is $1,117,042.45, plus interest at the annual rate of 12 percent in the amount of $29,140.49 through December 31, 2005, and $367.25 for each day thereafter.

At a meeting in December 2005, Plastech did not dispute that it owed Fast Tek $790,290.00. Plastech delivered a document to Fast Tek's executives comparing Fast Tek's billings to amounts that Plastech described as "approved." The total "approved" amount was $790,290.00. See First Am. Compl. Ex. F.[2]

Plastech has claimed that it does not owe disputed amounts because they are for overtime and ancillary charges, including travel expenses. During at least some parts of the contractual relationship, Plastech paid Fast Tek for overtime

---

[2] Plastech has submitted an affidavit from James Brown claiming that the statement in the December 2005 meeting was a settlement offer that should be inadmissible under Rule 408 of the Federal Rules of Evidence. Fast Tek has responded with a second affidavit from Jeffrey Lantz asserting that Mr. Brown was not present at the December 2005 meeting. Plastech has not used its opportunity to file a surreply brief to dispute that point. See S.D. Ind. L.R. 56.1(d). As a result, the foundation for the Rule 408 objection is itself hearsay, which cannot be used to win or defeat summary judgment. See, *e.g.*, *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998). Accordingly, Plastech has failed to dispute that it owes at least $790,290.00.

and ancillary charges, including travel expenses. The Terms of Service require Plastech to pay for such charges and expenses.

In response to Fast Tek's motion for summary judgment, Plastech has submitted the Affidavit of James Brown, the chief administrative officer for Plastech.[3] The final, signed version of that affidavit states in relevant part:

> 4. At various times throughout 2004 and 2005 Plastech sought such [quality control] services from Fast Tek. Fast Tek's Chief Operating Officer ("COO") had indicated to our staff that he was desirous of growing his business with Plastech and scheduled a meeting with Plastech's Vice President of Purchasing and me to discuss plans.
>
> 5. In the Quality services area, Plastech and the industry had become concerned about a lack of sound business practices. I met with Fast Tek's COO to insure that the relationship would be based on a good understanding of how business between the two companies would be handled.
>
> 6. During the meeting, Fast Tek's COO and I agreed that Plastech would significantly grow Fast Tek's business so long as the following principles were adhered to:
>
> > a. Fast Tek understood and would abide by Plastech's P.O. System and would not begin work until a P.O. was approved.
> > b. Fast Tek would bill at Plastech approved rates.
> > c. Plastech would not be billed for overtime, travel and expenses.

---

[3]With its original response to the motion for summary judgment, Plastech filed an unsigned affidavit from Brown. A week later, Plastech sought leave to file a signed but substantially different affidavit from Brown, saying that he had been out of the country and not available to sign an affidavit when the response was due to be filed. Over Fast Tek's objection, the court has allowed Plastech to file the late, signed affidavit, but required Plastech to file an explanation for its practice of filing a timely but unsigned affidavit (not that unusual by itself), and later filing a substantially different signed version when the affiant was available to sign it (highly unusual).

      d.      To the extent the work to be performed by Fast Tek involved training, the work would be billed to state training agencies as appropriate and not to Plastech.

      7.      Issues began arising between Plastech and Fast Tek when Plastech began receiving bills for work for which there were no valid P.O.s. The bills contained requests for payment for travel, overtime, expenses, and work which could not be validated.

      8.      When those issues came to light, Plastech immediately asked Fast Tek to stop work and began a process to audit exactly what work had been done.

*Discussion*

I.    *Fast Tek's Showing of Breach*

Fast Tek's submissions are sufficient to show that Fast Tek is entitled to summary judgment unless Plastech has raised a genuine issue of material fact. Plastech has not affirmatively disputed with admissible evidence any of the facts set forth by Fast Tek.

The written contract provides that Indiana law governs the agreement, see First Am. Compl. Ex. D, ¶ 3, and Plastech has not argued otherwise. To establish a prima facie case for breach of contract, the plaintiff must establish the defendant's contractual obligations and show how the defendant violated those obligations. *Pepsi-Cola Co. v. Steak 'n Shake, Inc.*, 981 F. Supp. 1149, 1157 (S.D. Ind. 1997). The essential elements the plaintiff must establish are the existence of a contract, the defendant's breach of contract, and damages. *Rogier v. Am.*

*Testing & Eng'g Corp.*, 734 N.E.2d 606, 614 (Ind. App. 2000), citing *Shumate v. Lycan*, 675 N.E.2d 749, 753 (Ind. App. 1997).

Fast Tek has established its agreement with Plastech and Plastech's subsequent breach in great detail. On September 28, 2004, before Fast Tek's services were rendered, Plastech was provided with a copy of the Controlled Shipping Pricing Summary and Terms of Service. Those documents specified pricing, payment terms, and all other associated costs. The Terms of Service included a complete integration clause, requiring that any modification be executed in writing by both parties. Plastech paid for some of the services provided in full, at least from September 2004 through April 2005. Pl. Ex. E. Fast Tek has submitted overdue invoices from May through December 2005. Pl. Ex. E. Fast Tek has offered evidence of contractual damages in the balance left unpaid, plus interest. As moving party, Fast Tek has met its initial summary judgment burden under Fed. R. Civ. P. Rule 56(c).

When a non-moving party does not contest the moving party's statement of facts in the manner prescribed by the court's local rules, the facts may be deemed admitted, at least to the extent they are properly supported by the record. See *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995). Plastech has not included a "statement of material facts in dispute," nor has it specifically controverted any fact asserted by Fast Tek or challenged the admissibility or sufficiency of its

evidence. The court has virtually no facts to construe in Plastech's favor. To avoid summary judgment on the central claim, Plastech relies only on the affidavit of James Brown and the conclusory assertion that the parties orally agreed to modify the written Terms of Service. The court concludes that Fast Tek is entitled to summary judgment for two reasons: waiver and the merits.

II.   *Waiver*

Plastech's assertion that the parties orally modified the agreement raises some issues that require at least a little legal subtlety. The Fast Tek Terms of Service provided that they could not be modified except in a writing signed by both parties. The common law of contracts holds that parties may agree orally to modify a written contract, even when the contract specifies that it may be modified only in writing. *E.g., Sees v. Bank One, Indiana, N.A.*, 839 N.E.2d 154, 161 (Ind. 2005); *TRW, Inc. v. Fox Development Corp.*, 604 N.E.2d 626, 630 (Ind. App. 1992); *Skweres v. Diamond Craft Co.*, 512 N.E.2d 217, 220 (Ind. App. 1987); see also *Mohr v. Metro East Mfg. Co.*, 711 F.2d 69, 72 (7th Cir. 1983) (applying general contract principles under Illinois law); cf. *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1285-86 (7th Cir. 1986) (distinguishing between common law and more specific provisions of Uniform Commercial Code).

At the same time, when parties have gone to the trouble to memorialize their agreement in writing, a vague claim of oral modification threatens to undermine all the benefits of written contracts. "There is no more vexing question in contract

law than when a written contract can be rewritten by oral testimony." *Bank v. Truck Ins. Exchange*, 51 F.3d 736, 737 (7th Cir. 1995) (applying Illinois law). The *Bank* case dealt with the doctrine of waiver, but the court addressed the issue more broadly, in terms of any of the contract law doctrines that can sometimes be invoked to use oral testimony to defeat the terms of a written contract. *Id.* at 739-40. The risk of self-serving oral testimony to avoid, modify, or waive the written terms is palpable. As Judge Posner wrote for the court in *Bank*: "You can always say that the other party to your contract had orally waived the enforcement of a provision favorable to him." *Id.* at 739. For the present case, merely substitute "modified" for "waived the enforcement of." See also *RB & W Mfg. LLC v. Buford*, 2005 WL 831291 *3 (N.D. Ill. Apr. 7, 2005) (granting summary judgment for plaintiff in contract case where defendant claimed an oral novation but offered only a vague and conclusory affidavit in support).

In this same vein is the Indiana Court of Appeals decision in *TRW, Inc. v. Fox Development Corp.*, 604 N.E.2d 626 (Ind. App. 1992). The court there reversed a jury verdict that had been based on a theory that the parties had orally modified the written construction contract to remove the maximum price term. The court recognized: "Even a contract providing that any modification thereof must be in writing may nevertheless be modified orally. However, the modification of a contract, because it is also a contract, requires all the requisite elements of a contract." *Id.* at 630-31, quoting *Indianapolis v. Twin Lakes Enterprises*, 568 N.E.2d 1073, 1084-85 (Ind. App. 1991). Because the evidence in *TRW* failed

to show that the other party had actually consented to the claimed modification, the verdict based on modification was reversed. 604 N.E.2d at 633.

Plastech's three-page brief in opposition to summary judgment makes no effort to show that the alleged oral modification satisfied all the elements of a contract, such as consideration or mutuality of obligation. It cites no law applicable to modification of contracts. The court recognizes that brevity is the soul of wit and that lawyers need not be encouraged, let alone required, to file unnecessarily long briefs. But this undeveloped suggestion of an oral modification – it cannot fairly be called an argument – is not enough to preserve the point. See *United States v. Johnson*, 248 F.3d 655, 666 n.1 (7th Cir. 2001) (an argument that fails to address the specific facts relevant to the issue is not enough); *Border v. Crystal Lake*, 75 F.3d 270, 274 (7th Cir. 1996) ("perfunctory and undeveloped arguments" are waived); *DeSilva v. DeLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."); see also *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 547 (7th Cir. 1998) ("even *pro se* litigants must expect to file a legal argument and some supporting authority," and a "litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority forfeits the point").

III.   *The Merits of the Suggested Oral Modification*

Even on the merits, Plastech has failed to raise a *genuine* issue of material fact.  The non-moving party must come forward with "appropriate evidence demonstrating that there is a pending dispute of material fact."  *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796-97 (7th Cir. 1999) (affirming summary judgment for plaintiff in breach of contract where opposing affidavit was conclusory and invited only speculation), citing *Anderson*, 477 U.S. at 248-49.  The object of the summary judgment procedure "is not to replace conclusory allegations of a complaint or answer with conclusory allegations of an affidavit."  *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Laborers' Pension Fund v. RES Environmental Services, Inc.*, 377 F.3d 735, 739 (7th Cir. 2004) (affirming summary judgment for plaintiff where defendant's affidavit in opposition was generalized and conclusory).

The Brown affidavit fails to raise a genuine issue of material fact.  Plastech's defense relies entirely on the supposed meeting described in Brown's affidavit. The affidavit is extraordinarily vague.  It does not say when or where the meeting took place.  It does not even name the other participants in the meeting.  There is no supporting or corroborating documentation.  There are no Plastech purchase orders, which supposedly govern the parties' relationship under Brown's theory of oral modification.  There is no indication of what prices or rates Plastech had approved for Fast Tek's services.  Cf. *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998) (affirming summary judgment; affidavit claiming that

management knew of offensive photographs at workplace did not include any specifics about who complained, to whom complaints were made, the nature of the complaints, or how the affiant gained personal knowledge of complaints). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983).

In a similar case, Judge Der-Yeghiayan of the Northern District of Illinois granted summary judgment for the plaintiff in a contract case because the defendant's affidavit was too vague to raise a genuine issue of fact. In *RB & W Mfg. LLC v. Buford*, 2005 WL 831291 * 3 (N.D. Ill. Apr. 7, 2005), the suit was on a promissory note. The defendant offered an affidavit claiming the parties had agreed to an oral novation. He claimed that he was present at a meeting with unidentified officials of the plaintiff, and he offered the conclusion that an oral novation agreement was reached to relieve him of his obligations. The court granted the plaintiff's motion for summary judgment because the vague and conclusory affidavit failed to raise a genuine issue of material fact to support the defense. Accord, *Liu*, 191 F.3d at 796-97 (affirming summary judgment for plaintiff in breach of contract case; vague and conclusory affidavit from defendant did not raise genuine issue of fact); cf. *Utica Mut. Ins. Co. v. Vigo Coal Co.*, 393 F.3d 707, 711 (7th Cir. 2005) (noting that a "finding of novation is dynamite"

because of threat it can pose to written contract, but affirming finding of novation based on detailed findings showing corroboration of claimed novation).

Similarly here, the affidavit alone does not include enough specific details to permit a reasonable jury to find in Plastech's favor. It does not provide specific concrete facts to support the alleged modification. To deny summary judgment on the basis of the Brown affidavit would be merely "to replace conclusory allegations of a complaint or answer with conclusory allegations of an affidavit," the course Justice Scalia warned against in his opinion for the Court in *Lujan v. National Wildlife Federation*, 497 U.S. at 888.

IV.     *Alternative Ground for Partial Summary Judgment*

Even if Fast Tek were not entitled to summary judgment on the full amount of its claim, it would still be entitled to summary judgment on Plastech's liability for the sum of $790,290.00, plus interest and fees and costs. Fast Tek has come forward with evidence that in a meeting in December 2005, Plastech admitted that it had "approved" work for which the charges were that sum. First Am. Compl. Ex. F; Lantz Aff. ¶ 23. Plastech agrees that the meeting occurred. The undisputed evidence shows that Plastech gave Fast Tek Exhibit F, which compares Fast Tek's billings to amounts that Plastech describes as "approved." Plastech's only response is to argue that its statement was a settlement offer that should not be admissible under Rule 408 of the Federal Rules of Evidence. As explained above in note 2, however, the evidentiary support for that assertion is itself inadmissible

hearsay. As a result, Fast Tek's evidence that Plastech admitted it owes at least $790,290.00 is undisputed.[4]

*Conclusion*

Fast Tek has met its burden of proof under Fed. R. Civ. P. 56(c), but Plastech has not. See Fed. R. Civ. P. 56(e). Therefore, the court is required to grant Fast Tek's motion for summary judgment in the amount of $1,117,042.45, plus interest at 12 percent per annum through December 31, 2005, amounting to $29,140.49, and $367.25 for each day thereafter. Final judgment shall be entered accordingly. Pursuant to Fed. R. Civ. P. 54(d)(2), plaintiff may also submit no later than August 17, 2006, a request for attorney fees and costs. Defendant may respond no later than 28 days later, with any reply brief due 14 days thereafter. Unless a party requests an evidentiary hearing, the court expects to decide fees and costs based on written submissions.[5]

---

[4]The court recognizes that the Lantz affidavit also does not spell out the time or place or names of those who attended the December 2005 meeting. The salient point, however, is that Plastech has not disputed that the meeting occurred as Fast Tek described it.

[5]The court also grants Plastech's motion to strike the letter from Fast Tek's president to a judicial officer of this court. The letter was an improper attempt at *ex parte* communication. The court addressed the *ex parte* nature of the problem by docketing the letter and providing a copy to Plastech. Such attempts by litigants to bypass both their lawyers and the fair procedures that give notice to the other side are highly improper and do nothing to strengthen a party's case. They are far more likely to raise doubts about the correspondent's case and to generate collateral litigation over the communication.

So ordered.

Date: August 3, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Niquelle Renee Allen
ICE MILLER LLP
niquelle.allen@icemiller.com

James H. Hanson
SCOPELITIS GARVIN LIGHT & HANSON
jhanson@scopelitis.com

Craig Joseph Helmreich
SCOPELITIS GARVIN LIGHT & HANSON
chelmreich@scopelitis.com

Myra Consetta Selby
ICE MILLER LLP
myra.selby@icemiller.com

Freedom S. N. Smith
ICE MILLER LLP
freedom.smith@icemiller.com